UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ELOY A. ROLE,

                            Plaintiff,          MEMORANDUM OPINION
                                                       AND ORDER

          -against-                                      CV 00-4781 (DRH) (ETB)

EUREKA LODGE NO. 434, I.A. of M & A.W.,
AFL-CIO and DIE-MATIC PRODUCTS, INC.,

                            Defendants.
-----------------------------------------------------------------------X

      Before the Court is a motion by plaintiff's former attorney, Bernard Weinreb ("Weinreb"), for release of a portion ($5,000.00) of the settlement amount ($15,000.00) presently held in escrow by the Clerk of the Court. Plaintiff Eloy A. Role ("Role" or "plaintiff") opposes the motion, and contends that Weinreb is not entitled to the fees. For the reasons explained herein, Weinreb's motion is granted to the extent that he receive $1,125.00 of the funds held in escrow. The remainder of the settlement proceeds - in the sum of $13,875.00 - shall be turned over to the plaintiff.

I.                                    BACKGROUND

      This action has a tortured history. Plaintiff filed the complaint in this action pro se on or about August 15, 2000, wherein he alleged that his former employer, Die-Matic Products, Inc. ("Die-Matic"), breached the collective bargaining agreement between the company and its union, Eureka Lodge No. 434, I.A. of M. & A.W., AFL-CIO ("Eureka"), when it discharged plaintiff. Plaintiff also alleged that the union failed to carry out its duty of fair representation. Plaintiff pursued this action pro se for approximately twenty-six months before Weinreb filed a

-1-

notice of appearance.

Weinreb represented plaintiff in this matter from October 2002 to January 28, 2003, at which time the Court granted Weinreb's motion to be relieved as counsel. (Weinreb Aff. ¶ 1.) Weinreb was not removed for cause. The parties agree that initially, Weinreb was paid on an hourly basis. (Weinreb Aff. ¶ 1, Cross-Motion by Plaintiff Disputing Plaintiff's Former Attorney Fees ("Pl.'s Mem."), at 2-3.) Both parties agree that they conferred on several occasions between April 4, 2001 and November 12, 2002. Weinreb at this time was acting as a legal consultant to plaintiff, who was prosecuting the action pro se. Plaintiff paid Weinreb a total amount of $2,200.00 for his services through November 12, 2002 (Pl.'s Mem. at 2-3.), and Weinreb does not dispute having received this amount.[1]

Weinreb states that at some point, he concluded that plaintiff would be unlikely to succeed in the matter. (Weinreb Aff. at ¶ 4.) Weinreb states that after advising Role of his conclusion, he and Role agreed that Weinreb would attempt to settle the matter, and that Weinreb would receive one-third of any settlement recovery (in addition to the $2,200.00 that he had been paid for work through November 12, 2002). (Id. at ¶ 7.) Role's version of events around this time differs from Weinreb's. Role states that at a meeting immediately prior to the November 12, 2002 conference with the Court, Weinreb told plaintiff he would be charged $750.00 "for assisting Plaintiff as a legal coach at a conference held at the District Court (on November 12, 2004) and successive fees would be $200.00 or $250.00. . . ." (Pl.'s Mem. at 3.)

Weinreb appeared on plaintiff's behalf at a brief status conference before the Court on November 12, 2002, at which time Weinreb initially stated that it was his intention "just to help

---

[1]The parties do not indicate the hourly rate at which Role was charged.

Role out today if possible." (Transcript of conference before the undersigned, dated November 12, 2002.) Weinreb and plaintiff were informed by the court that a decision must be made between them as to whether Weinreb appeared as counsel for plaintiff, since the Court did not recognize attorneys as legal coaches. Weinreb then entered an appearance as counsel for plaintiff, and the case was adjourned for a settlement conference. (Id.) Weinreb next appeared at the settlement conference before the undersigned on December 4, 2002. At that time, a settlement was reached in the amount of $15,000.00. (Tr. of Dec. 4, 2002 conference, at 3-11.)

The settlement was stated on the record, the plaintiff was questioned under oath regarding his understanding of the terms of the settlement, in order to ensure that the settlement was knowing and voluntary. (Id. at 12-16.) Role stated repeatedly that he understood the division of the $15,000.00 between himself and his attorney. (Id. at 12-16.) Unfortunately that fee division was not elicited on the record, which may have avoided the issue now before the Court.

Following the settlement conference, defendants forwarded two checks to plaintiff's attorney - one in the amount of $10,000.00 made payable to Role and one in the amount of $5,000.00 made payable to Weinreb. (Weinreb Aff. ¶ 13.) Defendants also enclosed a General Release form for the plaintiff to sign, and instructed Weinreb to distribute the checks after Role signed the release. (Id. ¶ 13.)

Role refused to sign the release, and the parties appeared at a conference on January 28, 2003, at which time the plaintiff stated that he wanted to vacate the settlement. (Tr. of Jan. 28, 2003 hearing, at 16-17.) A briefing schedule was set, and Weinreb's motion to be relieved as counsel was granted. (Order by Judge Boyle, dated Jan. 28, 2003.) The Court further directed

that the two settlement checks in the custody of Weinreb be deposited with the Clerk of Court, pending the outcome of the plaintiff's motion to vacate the settlement. (Id.) At that conference, plaintiff did not complain to the Court about the division of the settlement proceeds. When asked by the Court: "Now, is this a dispute about a legal fee or is this a dispute about a settlement?", the plaintiff replied, "About the settlement." (Tr. of Jan. 28, 2003 hearing, at 6.)

On July 17, 2003, I issued a Report and Recommendation, denying plaintiff's motion to vacate the settlement. Judge Hurley adopted the report on April 12, 2004, and plaintiff appealed to the United States Court of Appeals for the Second Circuit. On March 23, 2005, the Court of Appeals affirmed the district court's denial of plaintiff's motion to vacate the settlement. Role v. Eureka Lodge, 420 F.3d 314, 319 (2d Cir. 2005).

Following affirmance on appeal, by letter to Judge Hurley dated March 28, 2005, Role requested the release of the proceeds of the settlement. (Letter from Eloy A. Role to Judge Hurley, dated March 28, 2005.) In response, by letter dated April 1, 2005, Weinreb requested that the $5,000.00 check for attorney's fees be released to him. (Letter from Bernard Weinreb to Judge Hurley, dated April 1, 2005.) Judge Hurley referred the matter to me on April 22, 2005, and on May 5, 2005 I held a telephone conference on the matter. At the conference, Role argued that Weinreb was not entitled to attorney's fees because Weinreb was relieved as counsel in the case on his own motion, approximately six weeks after the entry of settlement. In his memo disputing Weinreb's request for the release of the $5,000.00, Role also suggests that Weinreb's fee was unconscionable, stating that "Weinreb's work on the case at hand was below the standard of an attorney's profession not only regarding fees but the way he conducted himself as

an attorney handling this case," and that "Weinreb's services were paid[2] in the amount of $7,200.00 which is obnoxious and immoral." (Pl.'s Mem. at 7, 12.)

II.			DISCUSSION

    A.    <u>Oral Contingency Fee Agreements</u>

Where a contract between an attorney and client is in dispute, the Second Circuit Court of Appeals has stated that attorney's fee agreements [are] held to different, and often higher, standards than ordinary contracts. <u>King v. Fox</u>, 418 F.3d 121, 133 (2d Cir. 2005). In particular, "[i]t is well established that New York law requires attorneys to put contingency fee agreements in writing." <u>Naiman v. New York University Hospitals Center</u>, 351 F. Supp. 2d 257, 263 (S.D.N.Y. 2005) (citing N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.11(d), which states that in a contingent fee matter, the attorney must provide the client with the terms of the agreement in writing). <u>See also</u> <u>Revson v. Cinque & Cinque</u>, P.C., 221 F.3d 59, 68-69 (2d Cir. 2000) (expressly agreeing with district court's ruling that contingent fee matters must be "detail[ed]" for the client in writing by the retained attorney); <u>Liner Tech., Inc. v. Hayes</u>, 213 A.D.2d 881, 883, 624 N.Y.S.2d 284, 285 (3d Dep't 1995) ("contingency fee agreement[s] . . . must be in writing").

Moreover, courts apply increased scrutiny to contingency fee agreements such as this one, which was entered into subsequent to an initial retainer agreement. <u>Naiman</u>, 351 F. Supp. 2d at 263-64 (citations omitted). In <u>Naiman v. New York University Hospitals Center</u>, the

---

[2]I take this to mean not that Weinreb was actually paid this amount, but rather that if Weinreb's request for the $5,000.00 as his one-third share of the proceeds were granted, Weinreb would then be compensated a total of $7,200.00 for his participation as legal consultant and as counsel to plaintiff at the settlement conference.

plaintiff and his attorney entered into a retainer agreement that governed their relationship until just prior to the beginning of settlement negotiations. 351 F. Supp. 2d at 259-60. At that time, according to the attorney, the parties modified the agreement to a contingency fee agreement, whereby the parties would divide a settlement equally. Id. The client asserted that he never consented to such an arrangement. Id. Upon review, the court held that because the attorney failed to satisfy New York law as it applies to contingency fee agreements by putting the agreement in writing, the agreement was unenforceable. Id. at 263-64 (citing Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 68-69 (2d Cir. 2000) (expressly agreeing with district court's ruling that contingent fee matters must be "detail[ed]" for the client in writing by the retained attorney).

The same reasoning applies here. The contingency fee is disputed. It was the responsibility of Weinreb as retained counsel to do so. He did not. Therefore, the contingency fee agreement on which Weinreb relies is unenforceable.

For the reasons that follow, the result would be the same even if Weinreb had put the contingent fee agreement in writing.

B. Unconscionable Fee Agreements

When examining an attorney-client contract, unconscionability may be assessed either at the time the contract was made or at the time the contract was enforced. Id. The test traditionally used by New York courts to gauge the conscionability of an attorney's fee agreement provides that:

> Contingent fees may be disallowed as between attorney and client in spite of contingent fee retainer agreements, where the amount becomes large enough to be out of all proportion to the value of the professional services rendered . . . . [T]he amount of

> the fee, standing alone and unexplained, may be sufficient to show
> that an unfair advantage was taken of the client or, in other words,
> that a legal fraud was perpetrated on him.

King v. Fox, 418 F.3d 121, 134-35 (2d Cir. 2005) (citations omitted). The burden is on the attorney to establish that the contract was fair, reasonable, and not overreaching. Id. (citation omitted). In conducting the analysis, the court must examine all of the facts and circumstances surrounding the agreement, "'including the intent of the parties and the value of the attorney's services in proportion to the fees charged.'" Id. (citing Gross v. Russo, 47 A.D.2d 655, 364 N.Y.S.2d 184, 186 (2d Dep't 1996)). Additionally, a court must construe an agreement between the client and the attorney in favor of for the client. Bizar & Martin v. U.S. Ice Cream Corp., 228 A.D.2d 588, 589, 644 N.Y.S.2d 753 (N.Y. App. Div. 2d Dep't 1996).

Role had paid Weinreb $2,200.00 in fees on an hourly basis for his work as a consultant for all his services up to the settlement conference. Role contends that Weinreb likened his services to those of a "legal coach," a statement supported by Weinreb's initial representation at the November 12, 2002 conference, that it was his intention "just to help Role out today if possible." (Transcript dated November 12, 2002.) When informed by the undersigned that the Court would recognize counsel as an attorney under these circumstances, Weinreb entered an appearance on behalf of Role.

While a contingency fee agreement that awards one-third of the recovery to the attorney is often considered customary, the court's inquiry here must focus on all of the circumstances of the relationship between Role and Weinreb and the work performed. King, 418 F.3d at 136. A one-third fee of $5,000.00 is entirely out of proportion to the services Weinreb rendered, i.e., appearing at one settlement conference which in total lasted no more than 2 hours, including the

proceeding in open court memorializing the agreement reached in chambers. The plaintiff litigated this action for approximately twenty-six (26) months prior to the settlement conference. The settlement conference lasted no more than an hour. Due to Role's greater familiarity with the case, which he had filed and pursued for so long, Role played an active role in the conference and at all times was present when the Court caucused with the each side separately in chambers before reaching a settlement. Under these circumstances, the terms of any one-third contingent fee agreement are unconscionable and therefore, unenforceable.

    C.    <u>Calculating the Reasonable Value of Services Rendered</u>

In order to calculate the reasonable value of the services Weinreb rendered in this matter, it is useful to look to the factors a court considers when an attorney seeks to recover fees on a quantum meruit basis. "These factors include, <u>inter alia</u>, 'the difficulty of the matter, the nature and extent of the services rendered, the time reasonably expended on those services, the quality of performance by counsel, the qualifications of counsel, the amount at issue, and the results obtained (to the extent known).'" <u>Dweck Law Firm, L.L.P. v. Mann</u>, No. 03 Civ. 8967, 2004 U.S. Dist. LEXIS 15730, at * 5 (S.D.N.Y. Aug. 6, 2004)(quoting <u>Sequa Corp. v. GBJ Corp.</u>, 156 F.3d 136, 148 (2d Cir. 1998)).

In the present case, Weinreb received $2,200.00 by November 11, 2002, which included his prior consultant service and his fee for the brief appearance at the November 12, 2002 conference, at which time the Court scheduled a settlement conference for December 4, 2002. I know that Weinreb spent approximately two hours on December 4, 2002 at the settlement proceedings. It is noteworthy that because of his exclusive reliance on a one-third contingent fee, Weinreb has filed no time records. Notwithstanding this, I will also note that his office is

located in Suffern, New York (Southern Rockland County), and I therefore will recognize that his travel time to and from the United States District Court in Central Islip is approximately two and one half hours. Accordingly, Weinreb is entitled to payment for four and one-half (4.5) hours of work at a reasonable fee. Given the prevailing rates of attorneys in the community and the nature of the work, Weinreb should be compensated at $250.00 per hour for a total attorney's fee equal to $1,125.00.

## CONCLUSION

For the foregoing reasons, Weinreb's motion for release of the attorney's fees paid to him as part of the settlement of this matter, and presently held in escrow by the Clerk of the Court, should be granted to the extent that he receives $1,125.00. The Clerk of the Court is directed to: (1) deliver to Eloy Role the check presently held in escrow for $10,000.00 made payable to Eloy Role, and (2) return to defendant, Die-Matic, the check for $5,000.00 made payable to Bernard Weinreb. Upon return receipt of the $5,000.00 check, Die-matic is directed to re-issue and deliver two checks: (1) a check made payable to Eloy Role in the amount of $3,875.00; and (2) a check made payable to Bernard Weinreb in the amount of $1,125.00. Thus, Role shall receive a total amount of $13,875.00 of the $15,000.00 held in escrow by the Clerk of the Court, and Weinreb shall receive a total amount of $1,125.00.

SO ORDERED:

Dated: Central Islip, New York
      November 22, 2005

                                    /s/ E. Thomas Boyle
                                    E. THOMAS BOYLE
                                    United States Magistrate Judge